UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

| | |
|---|---|
| IOANNI KONSTANTINOU, : | |
| : | CASE NO. 15-CV-861 |
| Plaintiff, : | |
| : | |
| vs. : | OPINION AND ORDER |
| : | [Resolving Doc. 45] |
| CHRIS FREEMAN, et al., : | |
| : | |
| Defendants. : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Ioanni Konstantinou sues Ohio Department of Youth Services Youth Specialists Andrew Samijlenko and Leonor Rivera and Operations Manager Ceasar Vanderpool under 42 U.S.C. § 1983. Plaintiff Konstantinou says Defendants were deliberately indifferent when they failed to protect Plaintiff while Plaintiff was housed at Cuyahoga Hills Juvenile Correctional Facility.[1]

On May 4, 2014, while Konstantinou was detained at the Cuyahoga Hills Juvenile Correctional Facility, another juvenile detainee assaulted Plaintiff Konstantinou. Plaintiff Konstantinou alleges that Samijlenko, Rivera, and Vanderpool were deliberately indifferent towards Konstantinou's safety when they allowed another juvenile, V.B., to leave open-door seclusion and assault plaintiff.

Defendants Samijlenko, Rivera, and Vanderpool move for summary judgment.[2] Defendants say that they are immune from suit in this case and that they acted reasonably with regard to V.B.'s assaulting Plaintiff. For the following reasons, this Court **DENIES** Defendants' motion for summary judgment.

---

[1] Doc. 1 at 6–7.
[2] Doc. 45. V.B. is also a defendant in this case but does not join this motion for summary judgment.

Case No. 15-cv-861
Gwin, J.

# I. Background

On May 4, 2014, Ohio detained Plaintiff Konstantinou in the Huron Unit of the Cuyahoga Hills Juvenile Correctional Facility.[3] The Huron Unit mostly houses minimum-security detainees.

That afternoon, correctional facility staff moved V.B. to the minimum-security Huron Unit. Previously, Ohio housed V.B. in the primarily medium security Cuyahoga Unit. Ohio placed V.B. in "open door seclusion" in the Huron Unit.[4] Ohio uses open door seclusion to give juveniles time to gather their composure after an incident. Unlike closed door seclusion, a youth in open door seclusion may leave the timeout cell with staff permission so long as he is calm.[5]

On May 4, 2014, before being moved to the Huron Unit, V.B. had threatened corrections officers and had been involved in a number of confrontations with corrections officers. Corrections officers described the May 4, 2014, 2:00 PM incident with V.B.:

> YS Williams reports, youth [V.B.] refused to comply with the open door procedure on Unit Huron. Youth [V.B.] exited open door seclusion and began wandering throughout the bed area socializing with various youth, refusing instructions to return to open-door seclusion. Dr. Karger was notified to report to Huron to initiate for both strategies in an attempt to regain compliance. Youth [V.B.] remained defiant and stated: "I ain't going nowhere, fuck that, I will fuck y'all up"[;] a planned intervention team was assembled due to youth [V.B.] affirmatively resisting institutional rules. While confronting youth [V.B.]'s on going [sic] negative behavior, [another juvenile detainee] began interfering with the responsibilities of staff by preventing staff from utilizing force to carry out a security function. Youth [V.B.] and [the other juvenile detainee] united as one in preparation to assault staff by punching there [sic] fist[s] and stating "We will fuck ya'll up come on"[;] the planned intervention moved forward to include both youth. Ultimately, [other juvenile detainee] complied and walked into seclusion on unit Geauga[;] however, youth [V.B.] stopped walking and attempted to prevent staff from exiting door sixteen by propping his foot against the door preventing staff from exiting the door to the incident. The code word was given to physically restrain youth [V.B.][;] YS Talley attempted to c-grip youth [V.B.]'s right arm, and Unit Manager Murchie assisted by holding youth [V.B.]'s right

---

[3] *Id.* at 2.
[4] *Id.*
[5] *Id.*

-2-

Case No. 15-cv-861
Gwin, J.

elbow against the wall to prevent him from elbowing YS Talley. YS Smith assisted by securing youth [V.B.]'s right side of his body against the wall to prevent the youth from being combative any further with staff. YS Williams assisted by holding on to both legs to prevent youth [V.B.] from kicking staff. YS Roncone assisted by holding youth [V.B.]'s right arm to allow the handcuff to be applied. * * * While en route to seclusion a balance break technique was used due to youth [V.B.] attempting to kick staff and stating "I will spit on ya'll"[;] the spit shield was applied. Youth [V.B.] was placed in seclusion[,] the spit shield was removed, [and] as youth [V.B.] threatened to assault staff, the handcuffs remained on until compliance was gained."[6]

Somewhat improbably, after V.B. assaulted and threatened corrections officers at 2:00 PM, V.B. was moved to a detention area typically assigned to minimal security youths and was improbably given open door seclusion privileges.[7]

On the evening of May 4, 2014, Defendants Samijlenko and Rivera worked the Huron Unit 10:00 p.m. to 6:00 a.m. shift. They worked at the "podium" adjacent to the bed area of the unit.

Late in the May 4, 2014, evening, detainee V.B. asked Defendant Samijlenko for permission to take a shower. Defendant Samijlenko gave the request to Defendant Vanderpool in Operations. Vanderpool granted the request.[8]

Operations Manager Vanderpool had authority to deny V.B.'s request because on May 4, 2014, V.B. had been involved in violent behavior.[9] Even when an Operations Manager gives

---

[6] Doc. 59-3 at 4.
[7] Before May 4, 2014, Detainee V.B. had received a number of disciplines after earlier threats and assaults to corrections officers and assaults upon other detainees.
[8] Doc. 45-1 at 8, 12.
[9] Doc. 57-1 at 38. Corrections Officer Rivera testified:

"Q. Okay. Male or female, did you ever know a prisoner to be refused a shower because of violent behavior?
A. Yes.
Q. And in the case when a person's been refused a shower, is it the operations manager that makes that call?
A. Yes."

-3-

Case No. 15-cv-861
Gwin, J.

shower privileges to a detainee in open door seclusion, the Department of Youth Services practice requires a Youth Specialist to escort the open door seclusion detainee to the shower.[10]

After Operations Manager Vanderpool gave V.B. permission to take a shower, V.B. moved around the Huron Unit bed area unescorted. Plaintiff Konstantinou says V.B. approached Defendants Samijlenko and Rivera and asked to make a phone call. When they refused, V.B. allegedly threatened to attack detainee Konstantinou who was in a cell adjacent to the guard's podium.[11] Plaintiff says that Defendants Samijlenko and Rivera heard V.B.'s threat but did not protect Plaintiff. V.B. then assaulted Plaintiff, striking him several times before Defendants Samijlenko and Rivera broke up the assault.

Defendants respond to Konstantinou's claims by saying that V.B. was calm while going to and from the shower, up until he unexpectedly assaulted Plaintiff Konstantinou.[12] Defendants say that they had no reason to know and did not actually know that V.B. would assault Plaintiff. Both parties agree that V.B. assaulted Plaintiff and that Defendants separated V.B. from Plaintiff within seconds after the assault started.

On February 16, 2016, Defendants Leonor Rivera, Andrew Samijlenko, and Ceasar Vanderpool filed for summary judgment.[13] On February 26, 2016, Plaintiff opposed Defendants' motion for summary judgment.[14] On March 7, 2016, Defendants replied.[15]

## II. Legal Standard

---

[10] Doc. 57-1 at 37. Corrections Officer Rivera testified:

> "Q. Was it common practice for a male to escort a male open door seclusion prisoner to the shower? A. Yes."

[11] Doc. 45-2 at 32.
[12] Doc. 45 at 9.
[13] Doc. 45.
[14] Doc. 57.
[15] Doc. 59.

-4-

Case No. 15-cv-861
Gwin, J.

**Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[16] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[17] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[18] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[19] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[20]

When parties present competing versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless those facts are blatantly contradicted by record before the court.[21] Otherwise, a district court does not weigh competing evidence or make credibility determinations.[22]

**Deliberate Indifference Standard**

Plaintiff Konstantinou brings claims against Defendants under 42 U.S.C. § 1983 for Eighth Amendment violations. Plaintiff brings these claims under a theory of deliberate indifference. Plaintiff says Defendants were deliberately indifferent in failing to protect Plaintiff from V.B.

---

[16] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[17] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[18] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[19] *Id.* at 586.
[20] *Killion*, 761 F.3d at 580 (internal citation omitted).
[21] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
[22] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).

-5-

Case No. 15-cv-861
Gwin, J.

To seek relief under § 1983, a plaintiff must allege facts showing that he was deprived of a right secured by the Constitution or law of the United States by a person acting under color of law. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."[23]

To make out a claim under the Eighth Amendment a plaintiff must show (1) that "he is incarcerated under conditions posing a substantial risk of serious harm" and (2) that the defendants exercised deliberate indifference towards the safety of the plaintiff.[24]

The deliberate indifference standard tracks criminal recklessness and has an objective and a subjective component:

> a prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.[25]

### III. Discussion

In this case Plaintiff testified that immediately before V.B. assaulted Plaintiff, V.B. told Defendants Rivera and Samijlenko that V.B. would beat Plaintiff up if Rivera and Samijlenko did not allow phone use. Under this version of the facts, Plaintiff Konstantinou was at substantial risk of serious harm from V.B. Furthermore, Defendants Rivera and Samijlenko knew about the risk—V.B. told them himself—and took no steps to protect Plaintiff from the risk. This is sufficient to make out a deliberate indifference claim.

Defendants offer a competing version of the facts: that Defendants Rivera and Samijlenko were unaware that V.B. was about to assault Plaintiff. Plaintiff and Defendants could

---

[23] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).
[24] *Id.* at 834.
[25] *Id.* at 837.

Case No. 15-cv-861
Gwin, J.

each succeed in convincing a jury that V.B. told—or V.B. did not tell—Rivera and Samijlenko that he was going to assault Plaintiff. Summary judgment on this issue is not appropriate.

Plaintiff also claims that Defendant Vanderpool was deliberately indifferent towards Plaintiff when Defendant Vanderpool authorized V.B. to take a shower while in open door seclusion. Plaintiff brings enough evidence to create a jury question on this issue as well.

While Defendant Vanderpool was not yet at work when Cuyahoga Hills Juvenile Correctional Facility staff moved V.B. to the Cuyahoga Unit, Vanderpool authorized V.B. to leave seclusion and move around the bed area to collect shower supplies.[26] Cuyahoga Hills Juvenile Correctional Facility staff allowed V.B. to move to and from the shower unescorted by any Youth Specialists. Defendant Rivera testified that even though there is no policy mandating that secluded youth be escorted to and from the showers, it is common practice to do so.[27] Defendant Rivera also testified that authorizing V.B. to use the showers was a bad call on Defendant Vanderpool's part, presumably because of V.B.'s behavior earlier in the day.[28] Under these facts, a reasonable jury could find that Defendant Vanderpool ignored a substantial risk of harm to Plaintiff Konstantinou when he authorized V.B. to take a shower while in seclusion and without an escort.

---

[26] Doc. 45-1 at 8, 12.
[27] Doc. 57-1 at 10–11.
[28] *Id.* at 37.

-7-

Case No. 15-cv-861
Gwin, J.

## IV. Conclusion

For the foregoing reasons, this Court **DENIES** Defendants' motion for summary judgment.

IT IS SO ORDERED.


Dated: March 14, 2016                    *s/        James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE